UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| In Re: JOHN G. BURGER Debtor, ) | |
| ) | |
| In Re: CATHRINE R. BURGER Debtor, ) | |
| ) | |
| CENTRAL MORTGAGE COMPANY, ) | 3:14-cv-00170-RLY-WGH |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | |
| ) | |
| STEVE  MURRY, ) | |
| MARCIA  MURRY, ) | |
| Appellees. ) | |
| ) | |

**ENTRY ON APPEAL FROM BANKRUPTCY COURT'S ORDER
DETERMINING STEVE MURRY AND MARCIA MURRY TO BE
SUCCESSFUL PURCHASERS AT AUCTION**

Debtors, John G. Burger, and Catherine R. Burger, filed for bankruptcy. During the course of the bankruptcy, the decision was made to sell several of the debtors' assets at auction. One of these assets was a piece of property, which Appellant, Central Mortgage Company ("Central Mortgage"), held a properly perfected first mortgage lien.[1] After the property[2] was auctioned, a dispute arose concerning who was the successful purchaser – the Appellant, Central Mortgage, or the Appellees, Steve and Marcia Murry.

---

[1] There is no dispute that Central Mortgage's lien was a first priority mortgage lien nor any dispute that the lien was properly perfected.

[2] The real property is identified in the Sale Order as Property 8 and was sold at auction as Tract 7. The address of the property is 265 S. Old Huntingburg Road, Jasper, Indiana 47546.

1

The Bankruptcy Court held the Murrys were the successful bidders at auction. Central Mortgage appeals that determination.

I.  **Background**

On March 21, 2014, the Bankrupcty Court entered an agreed Order Granting Motion to Sell Property Free and Clear of Liens (the "Sale Order"). Pursuant to Paragraph H of the Sale Order, all secured creditors who had valid liens on the Property may submit a credit bid. Specifically, Paragraph H reads:

> All secured creditors who have valid liens on the Property to be Auctioned may credit bid at the Auction in an amount not greater than the amount owed as of the Credit Bid Deadline, which is defined below (the "Credit Bid Maximum Amount"). Any Secured Creditor who has a valid lien and who may credit bid at the Auction must submit to counsel for the Consolidated Debtors, counsel for the Secured Creditors, and Schrader, no later than fourteen (14) business days prior to the Auction (the "Credit Bid Deadline), a written statement (a) stating that the Secured Creditor may make a credit bid not to exceed the Credit Bid Maximum Amount, and (b) identifying the Property to be Auctioned that may be the subject of such Secured Creditor's credit bid. The written statements of the Secured Creditor may be distributed to the parties via e-mail and to the e-mail addresses listed on the attached Exhibit "B" or via regular mail to the physical addresses listed on the attached Exhibit "B." Any credit bid of a Secured Creditor is subject to objection by the Consolidated Debtors or any other Secured Creditor, which objection shall be filed no later than seven (7) business days prior to the Auction. In the absence of such an objection, the Secured Creditor shall be entitled to credit bid at the auction.

(Record, Pg. 85).

On June 11, 2014, Schrader Real Estate and Auction Co., Inc.'s ("Schrader") auctioneer, Brad Horrall, auctioned the property. Horrall declared Steve and Marcia Murry to be the successful bidders. They bid $65,000.00, paid $6,500.00 in earnest money, and signed an agreement to purchase. On the day of the auction, Central

Mortgage did not communicate with Horrall or Schrader; nor did any representative of Central Mortgage physically appear or bid at the auction.

On August 4, 2014, the Debtors asked the Bankruptcy Court to determine who the successful purchaser of the property is – the Murrays or Central Mortgage. On October 3, 2014, the Bankruptcy Court determined the Murrys were the successful purchasers at auction. On December 1, 2014, the Bankruptcy Court entered its Findings of Facts and Conclusions of Law in support of that Order. Central Mortgage appealed the Order on December 15, 2014.

## II.   Standard

Pursuant to 28 United States Code Section 158(a)(1), a United States District Court has jurisdiction to hear appeals from the final orders of bankruptcy courts. In reviewing a bankruptcy court's decision, the court must accept a bankruptcy court's finding of facts unless they are clearly erroneous. *See First Wisconsin Nat. Bank of Milwaukee v. Federal Land Bank of St. Paul*, 849 F.2d 284, 286 (7th Cir. 1988). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948). The court reviews the Bankruptcy Court's conclusions of law *de novo*. *First Wisconsin Nat. Bank of Milwaukee*, 849 F.2d at 286.

## III.  Discussion

Central Mortgage raises two issues for the court to review. First, Central Mortgage argues the Bankruptcy Court committed clear error when it failed to determine

3

whether Central Mortgage conveyed a credit bid for the auction. Second, Central Mortgage asserts the Bankruptcy Court erred by determining as a matter of law that the Murrys were the successful bidders at auction. The court will discuss each in turn.

**A.     Did Central Mortgage submit a credit bid?**

In accordance with Paragraph H, Central Mortgage sent an email on May 23, 2014, to the Debtor's attorney, the attorneys for the other creditors, and the attorney for Schrader. The email and attachment contained the following text:

> Email: "Attached please find the notice of credit bid of Central Mortgage Company."
>
> Attachment:
>
> NOTICE OF CENTRAL MORTGAGE COMPANY CREDIT BID
> PLEASE TAKE NOTICE THAT pursuant to paragraph H of the Order Authorizing Sale of Debtors'' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances with Valid Liens to Attach to Proceeds of Sale (Doc. No. 564) (the "Order"), Central Mortgage Company will credit bid at the Auction. Such credit bid will be in an amount not to exceed the Credit Bid Maximum Amount, which, as of April 14, 2014 is $84,973.81[1]. . . .
>
> Pursuant to the Order, any objection to this statement must be filed with the Bankruptcy Court no later than seven (7) business days prior to the Auction.
>
> [1] This amount includes interest and fees and costs through 4/14/14. Interest and additional attorney fees continue to accrue and the final Credit Bid Maximum Amount will be higher than stated herein.

(pg. 114-115) (email and attachment headings added).

On June 1, 2014, Debtors' attorney responded: "Randy – Can we get an accounting to understand the numbers? Also, since the auction is set for June 11, Central

4

should be able to calculate its interest accrual to that date. Will there be any additional attorney fees[?] We need a solid number for the credit bid. Thanks." Central Mortgage responded on June 2, 2014, stating "We are awaiting an update payoff quote from my client to amend the credit bid." Then on June 6, 2014, Central Mortgage sent an email stating "attached please find the updated credit bid of Central. . . ." The email contained an attachment stating "<u>NOTICE OF CENTRAL MORTGAGE COMPANY AMENDED CREDIT BID</u>." This Notice contained nearly identical language to the quoted Notice above; only the monetary figures and dates were changed. The June 6 notice calculated the amount due for June 19, 2014.

The Bankruptcy Court Judge did not make an explicit finding regarding whether Central Mortgage submitted a credit bid; rather, the Bankruptcy Judge found Central Mortgage's "bid, or intent to bid, was never communicated to or received by the auction manager, Brad Horrall." (Findings of Fact and Conclusions of Law ¶ 4). The Bankruptcy Judge instead based his determination on contract law. Thus, the court will evaluate that reason rather than whether or not a bid was submitted to Schrader.

The Murrys argue that the emails do not communicate a credit bid on behalf of Central Mortgage, but rather the required notice pursuant to Paragraph H. To show that the communications from Central Mortgage were simply the notice, the Murrys point to the language in the notices sent on May 23 and June 26, which stated that Central Mortgage "will credit bid at auction" and that "[s]uch credit bid will be in an amount not to exceed" a certain price. Additionally, the Murrys rely on the language in Paragraph H

5

stating that a secured creditor "may credit bid at auction" to show that Paragraph H did not anticipate bids being made prior to the auction.

Central Mortgage alleges that the text of the emails constituted the credit bid and the attachments to the May 23, and June 6, 2014 emails were the notice required by the Sale Order. For example, the text of the June 2 email stated "we are awaiting an update payoff quote . . . to amend the credit bid." Likewise, the text in the email from June 6 stated "attached please find the updated credit bid of Central."

A bid is "a buyer's offer to pay a specified price for something." *Black's Law Dictionary*, bid (10th ed. 2014). The court will examine each email in turn to determine if a bid was made. First, the May 23, 2014, email cannot be construed as a credit bid by Central Mortgage. The text of the email indicates that the notice of the credit bid is attached, not an actual credit bid. The attached notice cannot be construed as the bid, because it indicates a bid will be made in the future and the amount of the bid is uncertain. Next, on June 2, 2014, counsel for Central Mortgage informs the parties that he is awaiting an updated amount. This email again does not contain a definite number or price and thus, cannot be construed as a bid.

Finally, on June 6, 2014, counsel for Central Mortgage sends an email stating "attached please find the updated credit bid of Central. The breakdown is as follows: . . . Total $86,910.33." The attachment is the notice of amended credit bid pursuant to Paragraph H, which indicates that Central Mortgage will credit bid at auction. Further, the amount in the notice is calculated to June 19, 2014, eight days past the date of the auction, and is higher than the amount shown in the body of the email. The fact that the

prices differ in this email makes the price of the alleged bid ambiguous. Thus, the June 6 email cannot constitute a bid because it fails to contain a definite price.

### B. Are Steve and Marcia Murry the successful bidders at auction?

Even if one of the communications sent from Central Mortgage constituted a bid, the court would still affirm the Bankruptcy Court's findings based on simply contract law. As stated above, the Bankruptcy Judge found that the bid, or intent to bid, was never communicated to or received by the auctioneer. Neither party disputes this finding of fact; however, Central Mortgage argues that by emailing the bids to Tison, allegedly an agent of Schrader, the bid should be considered to have been successfully communicated to the auctioneer. The Murrys respond that the existence of an agency relationship is immaterial, because the sale was final upon the falling of the gavel. *See* Ind. Code § 26-1-2-328(2). Further, the Murrays argue, the alleged failure to communicate a bid should be addressed in a claim against Schrader, not the innocent purchasers for value.

According to the bankruptcy court, the bid, or intent to bid, was never communicated to the person with the power to accept. The Bankruptcy Court relied on *Alfaro v. Stauffer Chemical Co.*, 362 N.E.2d 500, 505 (Ind. App. 1977) for the proposition that "there can be no acceptance of an offer the existence of which is unknown." Thus, the Bankruptcy Court found that the bid, or intent to bid, did not constitute an offer under contract law. Rather, at the auction, the Murrys offered $65,000.00 and the auctioneer accepted. A contract was then signed to comply with the Statute of Frauds. As the Bankruptcy Court concluded, a contract did not result from

7

Central Mortgage's alleged bid; rather, a binding contract to sell the property existed with the Murrys. Central Mortgage argues *Alfaro* is distinguishable because Schrader knew of the offer and should have accepted Central Mortgage's offer.

The court agrees with the Bankruptcy Court that the contract between the Debtors and the Murrys is binding, and a contract was never entered into with Central Mortgage. Central Mortgage fails to cite any case holding that the court has the authority to rescind a contract with an innocent purchaser in order to award it the property. Rather, if Central Mortgage is correct that it submitted a higher credit bid, then it has recourse against Schrader, but not against the Murrys.

**IV.  Conclusion**

The court concludes that the Bankruptcy Court Judge did not err in determining the Murrys to be the successful purchasers for two reasons. First, the court finds that Central Mortgage did not make a credit bid. Second, even if a credit bid was submitted to counsel for Schrader, the court finds that a valid contract exists with the Murrys and not with Central Mortgage. Simply, the Murrys' bid was accepted and Central Mortgage's alleged bid was not. Therefore, the court **AFFIRMS** the Bankruptcy Court's Order.

**SO ORDERED** this 21st day of September 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.